**AMERICAN RENAISSANCE LINES, INC., Plaintiff,**

v.

**SAXIS STEAMSHIP CO., and Multifacs International Traders, Inc., Defendants.**

**No. 67 C 909.**

United States District Court
E. D. New York.

Dec. 18, 1967.

James M. Leonard, New York City (McHugh & Leonard, New York City, of counsel), for plaintiff.

Howard M. McCormack, New York City (Zock, Petrie, Sheneman & Reid, New York City, of counsel), for defendant Saxis.

Harry T. Constas, Jamaica, N. Y., for defendant Multifacs.

## MEMORANDUM
## and
## ORDER

DOOLING, District Judge.

Plaintiff moves to remand an action, commenced in Queens County Supreme Court, and removed to this Court by one of two defendants on the diversity ground, supported by a charge that the second defendant had been collusively joined to defeat removal. The motion is denied.

In an arbitration under a charter party a large award was made against the defendant charterer, Multifacs, and in favor of defendant shipowner, Saxis. The arbitrators had considered that there was a material breach of charter duties by Saxis in refusing to follow the charterer's instructions, and that it was a damaging breach; but they concluded that Multifacs could not recover for the damages, or offset them against the claim of Saxis for unpaid charter hire, because Multifacs had sublet the vessel (the WARM SPRINGS) to plaintiff American Renaissance Lines, Inc., there was no proof that Multifacs was liable to Renaissance under the subletting for the damages flowing from Saxis' breach, and to award damages or a set-off to Multifacs would be unjustly to enrich it with a windfall damage award for damages it had not sustained. The arbitration award was confirmed in this Court and on appeal (375 F.2d 577). The Court Appeals held that it was wrong for this Court to hold that Renais-

sance was barred by the award from bringing an action to recover damages from Saxis; the Court of Appeals voiced no opinion on the merits of the substantive issues involved, that is, whether Renaissance was a subcharterer (with, normally, no direct rights against the owner), or an assignee, and the Court was emphatic that while a defense of *res judicata* or collateral estoppel would no doubt be raised in any suit by Renaissance against Saxis, and evidence on it could be offered, nothing said in the Court of Appeals or in the District Court opinions predetermined the issues of such an action.

Renaissance then sued Saxis and Multifacs in the Supreme Court of the State of New York, County of Queens. The complaint sets forth three claims, two against Saxis and one against Multifacs. No claim joins both Multifacs and Saxis in a charge of common liability. Multifacs and Renaissance are New York corporations, and Saxis is an Oregon corporation, having its principal place of business in Oregon.

The *first* claim, against Saxis, is that Multifacs assigned the charter of the WARM SPRINGS to Renaissance and that Saxis breached the charter by refusing to comply with Renaissance's instructions, to the damage of Renaissance. The *second* claim, against Multifacs, is that Mutlifacs subchartered the vessel to Renaissance, and then, being under a duty to see that the vessel pursued her voyages with dispatch, and that the master of the vessel faithfully obeyed the instructions of Renaissance, breached its duty as time charterer-owner as a result of the same acts that constituted Saxis' breaches, to the damage of Renaissance. The *third* claim, against Saxis, is that Multifacs either subchartered the WARM SPRINGS to Renaissance or assigned the charter to it, that performance of the charter party by Saxis was for the benefit of the charterer, its subcharterer, or its assignee, and that Renaissance, by virtue of its relation to Multifacs and the vessel, had the status and rights of a third-party beneficiary, and

Renaissance was entitled to recover from Saxis for the breaches of the charter party.

Saxis removed the case on a petition that charged that the joinder of Multifacs was made in bad faith, without reasonable basis and solely to defeat removal, and that it was fraudulent and without right. Plaintiff moved to remand. The affidavit of Saxis' counsel alleges that Multifacs had assigned the WARM SPRINGS charter to Renaissance and that there was a relation between Renaissance and Multifacs in that they shared a common address (a residence owned of record by "Oscar Owen"), and common officers (Mrs. Mary Owen is president and James Georgelis is vice-president of both), and in that Renaissance was incorporated specifically to transport certain cement that Multifacs was contracting to supply to the United States Government in Vietnam from a source of supply in Thailand. At the hearing of the motion it was stated by counsel for Multifacs that Renaissance and Multifacs had the same stockholders but that the stockholders did not own the same percentages of stock in both companies.

The theory of Renaissance is that it is now necessary only to determine whether Renaissance is an assignee or a subcharterer, Renaissance having a right to recover in either case from Saxis ultimately, the suit settling only whether the recovery will be direct or indirect; it is further the theory of plaintiff Renaissance that joinder of Multifacs in the present suit is necessary to determine its status vis-a-vis Saxis and so to prevent inconsistent results on that issue, for, plaintiff says, Saxis can avoid liability only through inconsistent adjudications; the stated interest of Renaissance is to prevent a severance of claims that will make it possible for Saxis to obtain inconsistent results.

Saxis contends that the unity of interest and action between Renaissance and Multifacs, as they appeared during the arbitration, are such that there is no actual controversy between Renaissance and Multifacs, and that Renaissance's

joinder of Multifacs as a defendant is a fraud.

Multifacs argues that if the vessel was subchartered, Renaissance would have to sue Multifacs for damages arising from Saxis' breach and Multifacs would, therefore, have to cross-claim against Saxis as the party ultimately liable. In its answer Multifacs, as alleged assignee, counterclaimed against Renaissance as being liable for the amount of the award made against Multifacs in favor of Saxis, and cross-claimed against Saxis for the amount of any liability that Renaissance might impose upon Multifacs in the present action by reason of acts and defaults of Saxis which also constituted breaches of duties owed by Multifacs to Renaissance.

That Renaissance and Multifacs are under a common control and common ownership is admitted. In the muddy context of the present set of controversies it does not necessarily follow that they must be treated as one. Renaissance is right in pointing out that the award assumes that the sub-charter or assignment between the two corporations was real enough and their entities distinct enough to warrant denying relief to Multifacs on the ground that its subletting to Renaissance on a back-to-back basis meant that Multifacs was not the damaged party. The arbitrators treated the two corporations as legally and economically separate.

It can at once be noted that, if neither company owns the other, the fact (if it be such) that both are owned by the same persons (though in different proportions) does not make the damage of one the damage of the other. In some circumstances the substance of the matter could be that the liability of Multifacs to Saxis and the putative damage claim of Renaissance against Saxis derived their economic significance from their effect on the ultimate owners, despite the differences in proportions of ownership. Much would depend not only on the extent of differences in proportions of ownership, but also on the nature and extent of any creditor interests in the two companies. Notwithstanding the apparent relevancy of such data, Multifacs and Renaissance continue to cultivate a studied ambiguity and opacity about their relationships.

The other facts are made plain enough. The purpose of Renaissance's making a claim against Multifacs is to enable Multifacs to claim over against Saxis if the arrangement between Multifacs and Renaissance is held to a subcharter and Renaissance is held not to have standing to sue Saxis directly. In a word, Renaissance has sued Multifacs as a means of imposing liability on Saxis in the event that Renaissance is held not to have a direct right of action against Saxis.

On these facts it cannot be said that a claim by Renaissance against Multifacs must from its very nature be unreal or be held to have been advanced in bad faith. It is, indeed, absolutely unlikely that, in view of the claim over against Saxis, Multifacs could find much practical reason to resist the claim of Renaissance, for the self-evident object of Renaissance's friendly pursuit of its claims against Multifacs is to impose liability on Saxis, and not, except in a transitory way, on Multifacs itself (cf. Lord v. Veazie, 1850, 49 U.S. (8 How.) 251, 254–255, 12 L.Ed. 1067); but under N.Y. CPLR §§ 1001(a), 1002(b), 1008, 3011 and 3019(b), as under Rules 13(g) and 14(a) (fifth sentence) of the Federal Rules, a collusive judgment is precluded because Saxis may assert against Renaissance any defense which Multifacs has to the plaintiff's claim. Contrast: United States v. Johnson, 1942, 319 U.S. 302, 304–305, 63 S.Ct. 1075, 87 L.Ed. 1413. See Wright, Federal Courts, 1963, 32–34. The interest of Saxis in effecting a truly adversary litigation of the claim of Renaissance against Multifacs assures the satisfaction of the requirement that there be an actual and noncollusive case or controversy, and the arbitrators' award and the opinion of the Court of Appeals indicate enough to preclude automatically characterizing as frivolous the plaintiff's presenting of an

alternative claim against Multifacs as a means of imposing ultimate liability upon Saxis. The case is not within the principle of Wilson v. Republic Iron & Steel Co., 1921, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 that "removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy" (cf. Wecker v. National Enameling & Stamping Co., 1907, 204 U.S. 176, 184–186, 27 S. Ct. 184, 51 L.Ed. 430; Mecom v. Fitzsimmons Drilling Co., 1931, 284 U.S. 183, 189–190, 52 S.Ct. 84, 76 L.Ed. 233) because on the facts the claim, good or bad, is neither frivolous nor functionless.

██  While Saxis suggests that the claims against it are separate from and independent of the claim against Multifacs within the meaning of 28 U.S.C. § 1441(c), the cases say that where a single recovery is sought for a single loss the statement of separate, alternative counts against separate defendants does not give the nonresident defendants a right of removal. American Fire & Casualty Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 may leave some room for the removal as independent claims of causes of action arising out of the same factual complex that gives rise to claims that are not removable, see Climax Chemical Co. v. C. F. Braun & Co., 10th Cir. 1966, 370 F.2d 616, 618–619, contrast Wright, Federal Courts, 1963, 117–118, but the present case does not satisfy the separateness and independence requirements by any standard.

With hesitation it is concluded that Saxis has successfully removed because realignment is required and, upon realignment, complete diversity exists. The sole substantial controversy in the case is that between Saxis on the one side and Renaissance and Multifacs on the other. The claims of Renaissance against Multifacs, it is easy to infer, would never have been put in suit except as a means of imposing liability on Saxis. The plain face of the case is that Renaissance and Multifacs together aver that Saxis is liable to one or the other of them, but that if Saxis is liable to Multifacs it is, on one theory, liable only if Multifacs, as a back-to-back subcharterer, is liable to Renaissance. While the claim of Renaissance against Multifacs is, thus, not collusive, but, as it were, preliminary, it derives its entire substantiality as a justiciable controversy from the circumstance that it deals with Saxis' acts as alleged wrongs and tenders to Saxis the opportunity of defense; the claim has no independent substantiality as a controversy between Renaissance and Multifacs; the issues between Renaissance and Multifacs, standing alone, have no litigious materiality. In not incomparable circumstances realignment of parties has been decisive of the determination of the existence of the required completeness of diversity. Cf. Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 71–72, 73–74, 62 S.Ct. 15, 86 L. Ed. 47; Broidy v. State Mut. Life Assur. Co., 2d Cir. 1951, 186 F.2d 490, 492; Hedges v. Rudeloff, S.D.Tex.1961, 196 F. Supp. 475; Musgrove v. National Surety Corp., N.D.Ala.1961, 191 F.Supp. 1; Utica Hillcrest Manor Corp. v. Phoenix Ins. Co., S.D.N.Y.1958, 165 F.Supp. 189. Such cases as Sansom v. New Amsterdam Ins. Co., N.D.Ala.1951, 95 F.Supp. 6, 9 and Aetna Ins. Co. v. City of Malden, E. D.Mo.1952, 102 F.Supp. 126 evaluate the elements of substantial controversy differently and reach different results. But in the present case the predominance of the single controversy between Saxis on the one side and the united interests of Renaissance and Multifacs on the other side requires realignment. Upon the realignment of Multifacs with Renaissance as alternative claimants against Saxis for the same recovery, complete diversity of citizenship is present.

Accordingly, it is

Ordered that plaintiff's motion to remand is denied.