**AMERICAN MUTUAL LIABILITY INSURANCE CO., Plaintiff,**

v.

**The FLINTKOTE CO., Liberty Mutual Insurance Co., et al., Defendants.**

No. 83 Civ. 3341 (WK).

United States District Court, S.D. New York.

June 9, 1983.

Siff & Newman, P.C. by Louis G. Corsi, New York City, for plaintiff.

Shearman & Sterling by Joseph McLaughlin, New York City, for defendant Flintkote.

Olwine, Connelly, Chase, O'Donnell & Weyher by Michael Twomey, New York City, for defendant Liberty Mut.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Before us is plaintiff's motion to remand the case to state court. For reasons stated below, the motion is granted.

## BACKGROUND

The material facts are not really in dispute, although their legal consequences are the subject of vigorous disagreement. Defendant Flintkote Co. ("Flintkote") is a Delaware corporation which manufactures and distributes construction material. Plaintiff American Mutual Liability Insurance Co. ("American") and defendant Liberty Mutual Insurance Co. ("Liberty") are both Massachusetts corporations who, at different times, were Flintkote's primary liability insurers. Until the end of June 1976, and for at least the previous decade, coverage had been provided by American; thereafter Liberty became Flintkote's primary insurer.

Since 1976 several thousand claims have been asserted against Flintkote for injuries alleged to have resulted from asbestos-containing products it had manufactured. These claims involve injuries occurring both before and after June 30, 1976. It is unnecessary to detail the history of the various disputes that have erupted between Flintkote and its two insurers and between the insurers. Suffice it to say that nobody seems to agree who is liable to whom or in what amount. However, during the course of the dispute that led to this litigation various arrangements—some formal and some informal—were concluded whereby one insurer or the other would deal with claims asserted against Flintkote, reserving for subsequent determination the liability as between one insurer and the other (or either and Flintkote).

In February 1982 American instituted a state court action to settle its dispute with Flintkote. This action did not involve defendant Liberty and was ultimately withdrawn pursuant to a tentative formula looking towards settlement. The arrangement (involving Flintkote, American, and Liberty) which was thereafter concluded proved, however, to be ineffective. In April 1983 American filed the instant state court action against Flintkote and Liberty (and 26 other insurance companies who, at one relevant time or another, had been Flintkote's excess carriers) in an attempt to seek judicial determination of the respective rights and obligations of all concerned. As between American and Flintkote the dispute is substantially similar to the one alleged in the previously withdrawn action. As between American and Liberty, the disputes which American seeks to resolve in this litigation include, at least, the following two: (a) is American entitled to recover from Liberty money it has paid on Flintkote's account and which might ultimately be determined to have been payable by Liberty?; and (b) is Liberty, on the other hand, entitled to assert similar claims against American?

Invoking diversity jurisdiction, 28 U.S.C. § 1332, defendant Flintkote removed the state court action to this Court pursuant to 28 U.S.C. § 1441(a). Plaintiff American now moves to remand on grounds that there is no complete diversity between plaintiff and defendants and, therefore, that this Court lacks subject matter jurisdiction.[1]

## DISCUSSION

It is undisputed that the plaintiff American and defendant Liberty are both citizens of Massachusetts. Inasmuch as there ex-

1. Plaintiff also contended that the case should be remanded on the alternative grounds that not all defendants had joined in the petition for removal, see Fed.Proc.L.Ed. § 69:81 (1981), and that some of the excess carriers were citizens of New York, which fact would bar removal under 28 U.S.C. § 1441(b). We focused, however, on the dispute among American, Flintkote, and Liberty because, as we see it, it is the "main event" of this litigation. In light of our ruling we have no occasion to consider whether the additional grounds raised would—in and of themselves—warrant a remand.

ists, therefore, no complete diversity, this would ordinarily require that we remand the case to state court. *See* 1A Moore's Federal Practice ¶¶ 0.157[5], 0.151[3] (1983). Flintkote seeks to avoid this result by contending (a) that the non-diverse defendant Liberty was joined fraudulently to defeat removal and, accordingly, that its citizenship should be disregarded; (b) that Liberty should be realigned with American as an additional plaintiff; and (c) that, in any event, there exists at least one "separate and independent" controversy between American and Flintkote rendering the entire case removable under 28 U.S.C. § 1441(c). We find none of these contentions persuasive.

Fraudulent Joinder

■ It is axiomatic that in all removal cases the burden is with the removing party. "When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof'." *R.G. Barry Corp. v. Mushroom Makers, Inc.* (2d Cir.1979) 612 F.2d 651, 655 (citing cases); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.* (S.D.N. Y.1981) 521 F.Supp. 1046, 1048; Fed.Proc. L.Ed. § 69:128 (128). This is particularly so where the removing party seeks to oppose a motion to remand on a claim of fraudulent joinder. To be sure, "[d]iversity jurisdiction is not destroyed by joinder of a non-diverse party if such joinder is fraudulent"—*i.e.,* effected to defeat ·federal jurisdiction. Fed.Proc.L.Ed, § 69:20 (1981). Proof of such joinder requires, however, a showing of bad faith, 1A Moore's Federal Practice ¶ 0.161[2] n. 13 (citing cases), and "like any other allegation of fraud, must be pleaded with sufficient certainty to justify that joinder was a fraudulent device to prevent removal." *Updike v. West* (10th Cir.) 172 F.2d 663, 665 (mere allegations insufficient), *cert. denied,* (1949) 337 U.S. 908, 69 S.Ct. 1050, 93 L.Ed. 1720. *Accord, B. Inc. v. Miller Brewing Co.* (5th Cir.1981) 663 F.2d 545, 549 (citing cases); *Macaluso v. Monda-*

*dori Publishing Co.* (E.D.N.Y.1981) 527 F.Supp. 1017, 1019; *Saylor v. General Motors Corp.* (E.D.Ky.1976) 416 F.Supp. 1173, 1176; 1A Moore's Federal Practice ¶ 0.161[2] at 282 (1983). Thus, apart from direct proof that there has been outright fraud in the plaintiff's pleading of jurisdictional facts, *see* 1A Moore's Federal Practice ¶ 0.161[2] nn. 14–15 (citing cases), the stringent test for fraudulent joinder has uniformly been at least whether there is any reasonable basis for predicting that state law might impose liability on the non-diverse defendant. Fed.Proc.L.Ed. § 69:21 (1981). Judge Weinfeld has aptly stated that "[a] joinder [is fraudulent] if the allegations ... with respect to the [fraudulently joined] defendant are shown to be *so clearly false* and fictitious that *no factual basis exists* for an honest belief [in] ... liability." *Quinn v. Post* (S.D.N.Y.1967) 262 F.Supp. 598, 603 (emphasis added). Other courts have expressed the evidentiary test which the removing defendant must meet to establish fraudulent joinder in equally exacting terms. *See, e.g., B. Inc. v. Miller Brewing Co., supra,* 663 F.2d 545 (no possibility of liability); *Tedder v. F.M.C. Corp.* (5th Cir.1979) 590 F.2d 115 (no arguably reasonable basis for liability); *Smoot v. Chicago, Rock Island & Pacific R.R.* (10th Cir.1967) 378 F.2d 879 (complete certainty upon undisputed evidence); *Lewis v. Time, Inc.* (E.D.Cal.1979) 83 F.R.D. 455 (no colorable ground for liability). It is also well established that, in assessing the existence of fraudulent joinder, the Court "should resolve all disputed questions of fact in favor of the plaintiff," *B. Inc. v. Miller Brewing Co., supra,* 663 F.2d at 551, and, likewise, resolve in plaintiff's favor any doubt as to the state of controlling law. *Id.* at 549; *Charest v. Olin Corp.* (N.D.Ala.1982) 542 F.Supp. 771, 775.

As applied to the present motion to remand, the teachings of the foregoing cases lead us to inquire whether it could unhesitatingly be said that under New York law American could not maintain an action against Liberty on the basis of equitable subrogation with respect to claims it had

honored which it claims to have been properly attributable to Liberty; and whether it could be said "with complete certainty" that American could not bring an action for declaratory judgment which would foreclose Liberty from making similar claims against it. Defendant Flintkote has not called to our attention any New York authority that disposes conclusively of either question. Our own research has likewise failed to find an answer that negates—with the requisite degree of certainty—the viability of either such action by American against Liberty. *See, e.g., Federal Ins. Co. v. Atlantic National Ins. Co.* (1969) 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (declaratory judgment); *Atlantic Mutual Ins. Co. v. Atlantic National Ins. Co.* (1st Dep't 1971) 38 A.D.2d 517, 326 N.Y.S.2d 438, *aff'd mem.,* (1973) 33 N.Y.2d 817, 350 N.Y. S.2d 909, 305 N.E.2d 917 (same); *King v. Pelkofski* (2nd Dep't 1965) 24 A.D.2d 1003, 266 N.Y.S.2d 61 (subrogation, generally, is a favored remedy which courts are inclined to extend), *aff'd,* (1967) 20 N.Y.2d 326, 282 N.Y.S.2d 753, 229 N.E.2d 435; *Medical Malpractice Ins. Assn. v. Medical Liability Mutual Ins. Co.* (1st Dep't 1982) 86 A.D.2d 476, 450 N.Y.S.2d 191 (suggesting possibility of subrogation where one insurer paid liability on risk covered by another insurer).[2]

Flintkote seeks to buttress its plainly insufficient allegation of fraud by seizing primarily on the fact that in the 1982 litigation American had sued Flintkote only, without then deeming it necessary to add Liberty as a defendant. It is argued, therefore, that the present joinder of Liberty must have been intended solely to thwart federal jurisdiction. This argument is wholly without merit. American's purpose in making Liberty a defendant in this case is of no moment, *see* 1A Moore's Federal Practice ¶ 0.161[2] nn. 9–11 (citing cases), nor is it— in and of itself—of any consequence that

Liberty was not made a defendant in a previous litigation. *See Quinn v. Post, supra,* 262 F.Supp. at 604.

■ Based on the foregoing we must reject Flintkote's contention that Liberty was fraudulently joined. We emphasize in this connection that the mere fact that the New York Court of Appeals might ultimately reject one or all claims which American seeks to bring against Liberty is immaterial. 1A Moore's Federal Practice ¶ 0.161[2] n. 12 (citing cases). The allegations of fraudulent joinder must fail because we cannot confidently say that the claims against Liberty are specious under New York law.

### Realignment

Flintkote argues, alternatively, that the underlying dispute is, in fact, one between Flintkote and all of its insurers. It is therefore contended that Liberty and American belong on the "same side" of the dispute. We are urged to realign the parties accordingly and thus to salvage jurisdiction, there being, of course, no requirement of diversity among co-parties.

This argument is without merit. To be sure, it is conceivable that in a different litigation Flintkote might elect to sort out this controversy by suing all its insurers. The question before us, however, is whether realignment in *this* case is appropriate. In that regard, the possible cast of defendants in a different action is of no consequence.

The guiding principles on the question at hand are well established. It is our duty to "look beyond the pleadings" to determine whether there is, at least, a "collision of interests" between American and Liberty regarding the "principal purpose of the suit." *Indianapolis v. Chase National Bank* (1941) 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86

---

**2.** Both American and Flintkote have sought to find the answer to the issue of subrogation in cases dealing strictly with insurance law. This effort is, perhaps, misdirected. The right to subrogation, if any, would seem to us to arise, not out of the insurance policies, but out of the arrangements (both formal and informal) whereby the respective insurance companies are alleged to have defended or paid claims against Flintkote, reserving eventual determination of their ultimate liability. These arrangements—one would at least be able to argue—may give rights of subrogation under New York law. *See Medical Malpractice Ins. Assn. v. Medical Liability Mutual Ins. Co.,* supra, 86 A.D.2d 476, 450 N.Y.S.2d 191.

L.Ed. 47. *See, generally,* Fed.Proc.L.Ed. §§ 1:238–1:255 (1981). *Cf. also Lewis v. Odell* (2d Cir.1974) 503 F.2d 445, 447 (stockholder derivative action). Such "collision of interests" has repeatedly been found to exist between insurers in actions brought by one insurer against other insurance companies (and other parties) to sort out their respective obligations. *See, e.g., American Motorists Ins. Co. v. Trane Co.* (7th Cir. 1981) 657 F.2d 146; *C.Y. Thomason Co. v. Lumbermens Mutual Casualty Co.* (4th Cir. 1950) 183 F.2d 729, 733.

On the record before us it is apparent that the vitality of the controversy between American and Liberty well exceeds the threshold required to find such "collision" of interests as would bar realignment. *See Trane, supra,* 657 F.2d 146; *C.Y. Thomason Co., supra,* 183 F.2d 729. *See also* 3A Moore's Federal Practice ¶ 19.03[1] n. 9 (1982) (citing cases). Flintkote's argument to the contrary is but a clever rendition of the contention that the possibility of antagonism between Liberty and co-defendant Flintkote warrants Liberty's realignment as plaintiff. This argument has heretofore been found wanting. Thus, in reversing a District Court's realignment of defendant insurer as plaintiff the *Trane* Court specifically stated that "[a]ny two insurers may share an interest in escaping liability to a party they both insure . . . It does not follow that the insurers' interests are harmonious." 657 F.2d at 150. Therefore, "a mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment." *Id.* at 151. *See also Irving Trust Co. v. Century Export & Import* (S.D.N.Y. 1979) 464 F.Supp. 1232, 1241 ("that one defendant may benefit should plaintiff prevail against another . . . does not provide a sufficient basis for realignment"); Fed. Proc.L.Ed. § 69:17 n. 9 (1981).

█ In substance, Flintkote offers no more than the possibility of conflict with its co-defendant to support the suggestion that the co-defendant be realigned as plaintiff. The foregoing teaches us that this is altogether insufficient.[3]

Separability

As stated above, American seeks a declaration that neither Liberty nor Flintkote is entitled to recover from American money paid in settling certain claims. In support of this relief American has alleged, among other grounds, that both Flintkote and Liberty have been negligent in their handling of claims. In a letter of May 23, 1983 [made part of the record] counsel for Flintkote argues that the claim of negligent handling against it—a non-diverse defendant—is "separate and independent" within the meaning of 28 U.S.C. § 1441(c) and, therefore, properly removable. *See, generally,* 1A Moore's Federal Practice ¶ 0.163 (1983). Such allegedly "separate and independent" claims having been thus removed, the rest of the case would, of course, also follow them into federal court. *See Hazel Bishop, Inc. v. Perfemme, Inc.* (2d Cir.1963) 314 F.2d 399, 402–03; *Leinberger v. Webster* (E.D.N.Y.1975) 66 F.R.D. 28, 31; 1A Moore's Federal Practice ¶ 0.163[4.–8] (1983).

A few guiding principles are well settled in connection with the question whether claims are "separate and independent" within the meaning of 28 U.S.C. § 1441(c). First (and foremost), it is established that the enactment of § 1441(c) was intended to *limit* the right to removal and, should, therefore, be restrictively applied. *American Fire & Cas. Co. v. Finn* (1951) 341 U.S. 6, 10–14, 71 S.Ct. 534, 538–40, 95 L.Ed. 702 (seminal case interpreting § 1441(c)); *Paxton v. Weaver* (5th Cir.1977) 553 F.2d 936, 938–39; *Murphy v. Kodz* (9th Cir.1965) 351 F.2d 163, 166; *City of New York v. New York Jets* (S.D.N.Y.1977) 429 F.Supp. 987, 990; 1A Moore's Federal Practice ¶ 0.163[4.-–5–1] at 340 (1983) ("tendency has been toward a restrictive application against removal under § 1441(c)"). Second, it being

---

**3.** In light of our previous ruling that no fraudulent joinder had been established because an action against defendant Liberty seemed, at least, plausible under New York law, it would be indeed anomalous if we were to find Liberty to have been improperly aligned. *See* 1A Moore's Federal Practice ¶ 0.161[1.–1] nn. 22–23 (1983).

clear that § 1441(c) is a jurisdictional statute, *Irving Trust Co. v. Century Export & Import, supra,* 464 F.Supp. at 1236–37, it is also settled that the test imposed by § 1441(c) is a matter of federal law, independent of the rights and obligations defined by the substantive claims under state law. *Paxton v. Weaver, supra,* 553 F.2d at 940–41; *Charles Dowd Box Co. v. Fireman's Fund Ins. Co.* (1st Cir.1962) 303 F.2d 57, 60; *Federal S & L Ins. Corp. v. Quinn* (7th Cir.1969) 419 F.2d 1014, 1018; *Thornton v. Allstate Ins. Co.* (E.D.Mich. 1980) 492 F.Supp. 645, 648. It is also settled that claims are not "separate and independent" merely because the complaint contains separate prayers for relief, *Preas v. Phebus* (10th Cir.1952) 195 F.2d 61, 63, alternative prayers for relief, *American Renaissance Lines, Inc. v. Saxis Steamship Co.* (E.D.N.Y.1967) 277 F.Supp. 731, 735, multiple theories of recovery, *Lancaster Gen. Hosp. v. Emergency Hlth. Serv. Fed.* (E.D. Pa.1982) 534 F.Supp. 1106, 1108 (citing cases), or separate counts. 1A Moore's Federal Practice ¶ 0.163[4.–3] n. 5 (1983) (citing cases). Nor is the characterization dependent on requirements of proof, *City of New York v. New York Jets, supra,* 429 F.Supp. at 991–92, or on whether plaintiff sues defendants jointly, severally, or jointly and severally. *Lenoir City Co. v. Leland* (D.C. Tenn.1979) 479 F.Supp. 82, 83.

Drawing, literally, on the operative language used by the Supreme Court in *Finn, supra,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, the vast majority of courts have settled on the so-called "single wrong" test, *Motor Vehicle Cas. Co. v. Russian etc.* (N.D.Cal.1981) 538 F.Supp. 488, 493–94; *Lancaster Gen. Hosp., supra,* 534 F.Supp. at 1108, or on the "related series of events" test, *Union Planters Nat. Bank v. CBS Inc.* (6th Cir.1977) 557

F.2d 84, 89; *Schwartz v. Merrill Lynch, Inc.* (N.D.Cal.1976) 424 F.Supp. 672, 673–74. *See Finn, supra,* 341 U.S. at 14, 71 S.Ct. at 540 ("single wrong"); *Id.* at 16, 71 S.Ct. at 541 ("related transactions"). In reversing a District Court's finding that a tort and a contract claim—both of which had been brought in a suit to recover money due on a construction job—were "separate" under § 1441(c), the First Circuit aptly summarized the law in these terms:

> Although the "single wrong" rule resolves the removal question presented in this case, as it did in *Finn,* it should not be perceived as articulating an exhaustive test for applying § 1441(c). Even though an action implicates more than one wrong it may nevertheless fail to contain any separate and independent claims. What should determine the applicability of § 1441(c), however many wrongs may comprise a particular suit, is whether those wrongs arise from an interlocked series of transactions, that is, whether they substantially derive from the same facts.... [citations omitted]. If they do, the congressional objective to require "more complete disassociation," thus limiting the availability of removal, would not be served by accepting jurisdiction of the action. *New England Concrete Pipe v. D/C Systems* (1st Cir.1981) 658 F.2d 867, 874 n. 12.

To test the application of these general principles to specific facts we have reviewed over sixty insurance-related cases reported since the Supreme Court announced its pivotal decision in *Finn,* construing the "separability" requirement under § 1441(c). We have found *no* presently viable authority that could even plausibly be said to support Flintkote's position on this matter.[4] Indeed, in cases which sought

---

4. Of the sixty-four cases we reviewed only eleven sustained the contention that a "separate and independent" claim had been presented. They are all distinguishable from the case at hand, and most turn on their very peculiar facts. *White v. U.S. Fidelity & Guar. Co.* (1st Cir.1966) 356 F.2d 746, and *Harris v. Equitable Life* (S.D.Iowa 1957) 147 F.Supp. 478, are both, in fact, fraudulent joinder cases. In *White* the decision under § 1441(c) is practically dictum in light of the pervasive suggestion that the non-diverse defendant had been either fraudulently joined or should be realigned with plaintiff. *Harris* does not even mention § 1441(c). *Kornegay v. Hardware Mutual Fire Ins.* (E.D.N. C.1952) 106 F.Supp. 347, and *Leppard v. Jordan's Truck Line* (E.D.S.C.1953) 110 F.Supp. 811, are a pair of old—and, by now, discredited—cases which based their decision entirely on the fact that under *state* law the claim

to sort out the respective rights and obligations of parties to insurance arrangements, courts have been generally steadfast in their refusal to accept the contention that a particular claim was "separate and independent" under § 1441(c) so long as such claim was even arguably related to the parties' underlying relationship.[5] *See, e.g., American Fire & Cas. Co. v. Finn, supra,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702; *Charles Dowd Box Co. v. Fireman's Fund Ins. Co., supra,* 303 F.2d 57; *Motor Vehicle Cas. Co. v. Russian etc., supra,* 538 F.Supp. 488; *Carpenter v. Illinois Cent. Gulf R.R. Co.* (D.C. La.1981) 524 F.Supp. 249; *Lavan Petroleum Co. v. Underwriters* (S.D.N.Y.1971) 334 F.Supp. 1069; *Schwartz v. Employers Mutual Liab. Ins. Co.* (S.D.N.Y.1959) 170 F.Supp. 194 (Weinfeld, J.).

■ Based on the foregoing it is apparent that we cannot sustain Flintkote's contention that American's cause of action against it for negligent claims handling is "separate and independent." Such contention must fail when tested against any of the suggested formulations. Whether the allegation of negligent handling be termed a separate theory of recovery, an alternative prayer for relief, or a different count, it is clear that it flows from the "inter-

against the non-diverse defendant could not be legally joined with the claim against the diverse one. This is contrary to the now established proposition that state law is not determinative. There is furthermore persuasive precedent reaching contrary result. *See Charles Dowd Box Co. v. Fireman's Fund Ins. Co.* (1st Cir. 1962) 303 F.2d 57. *Baltimore Gas & Electric Co. v. U.S. Fidelity & Guaranty Co.* (D.Md. 1958) 159 F.Supp. 738 is a case in which nobody had made a motion to remand. All parties *wanted* to stay in federal court and, thus, the opinion can hardly be said to reflect a contested position on this issue. Indeed, the main justification for retention of jurisdiction appears to be judicial economy. *Breslerman v. American Liability Ins. Co.* (E.D.N.Y.1959) 169 F.Supp. 531 cites extensively to the "judicial economy" rationale of the unpersuasive *Baltimore Gas* case, *supra.* Furthermore, the claims against various insurers—although they related all to one fire—were under separate policies covering entirely separate properties, so that no real question of disputed coverage between insurers was involved. *Mitchell v. Southern Farm Bureau Cas. Ins. Co.* (W.D.Ark. 1961) 192 F.Supp. 819, involved an action for negligent settlement against a diverse insurer and a prayer for an *injunction* against a non-diverse judgment creditor to prevent him from executing against the plaintiff pending resolution of the instant case. It is apparent that the proceeding against the non-diverse party was entirely subordinate to the matter before the court. *Cf. White v. U.S. Fidelity, supra,* 356 F.2d 746 (in similar circumstances suggesting that judgment creditor was fraudulently joined). *Lauf v. Nelson* (D.Mont.1965) 246 F.Supp. 307 is entirely inapposite because it *remanded* a case on a finding that a personal injury and a property claim were "independent" for purposes of *jurisdictional amount,* and could, therefore, not be aggregated. This is not the inquiry before us. *Knight v. First Pyramid Life Ins. Co.* (W.D.Okl.1966) 256 F.Supp. 32 involved a claim for failure to provide life insurance and one for invasion of privacy. *Wayrynen Funeral Home v. J.G. Link & Co.* (D.Mont.1968) 279 F.Supp. 803, held a *third-party claim* against the insurer to enforce the obligation to defend, to be "independent" of the original claim against the defendants. As to the general question whether third-party claims will support removal, "the cases are 'hopelessly divided'." Fed.Proc.L.Ed. § 69:37 (1983) (citing cases). In any event, that is not the situation here. The finding of "separability" in *Garrett v. Bankers Life & Cas. Co.* (S.D. Tex.1971) 334 F.Supp. 368 is dictum since the decision to remand in that case turned on the failure to join certain defendants in the removal petition. *National S & L Assoc. v. St. Paul Fire & Marine Ins. Co.* (E.D.Wis.1979) 84 F.R.D. 425, held that a contract action to recover under a bond was independent of a fraud claim against the plaintiff's own employees. Finally, *Thornton v. Allstate Ins. Co.* (E.D.Mich.1980) 492 F.Supp. 645 determined—on a finding that there was "no thread in common"—that a claim against an insurer by a taxi driver who had been assaulted was independent of the taxi driver's claim against his employer for failure to take proper precautions and for failure to provide workers' compensation insurance. If, in spite of the foregoing distinctions, these cases retain some persuasive force—singly or in combination—such force surely pales in comparison to the abundant precedent to the contrary.

**5.** In the letter of May 23, 1983 counsel for Flintkote invites our attention to *Lyon Ford, Inc. v. Ford Marketing Corp.* (E.D.N.Y.1971) 337 F.Supp. 691, which sustained removal on the basis of 28 U.S.C. § 1441(c). Although the Judge technically predicated the decision on § 1441(c), it appears to us that he was largely motivated by a well-justified conviction that the joinder of the non-diverse defendant had been fraudulent.

locked series of transactions" which gave rise to this litigation. By no stretch of reasonable argument can it plausibly be said that such allegation does not "substantially derive from the same facts" as underlie other aspects of this dispute. The ."single wrong" at issue in this case is "who is to pay for the claims and for their defense"? *See American Fire Cas. Co. v. Finn, supra,* 341 U.S. at 14, 71 S.Ct. at 540. Flintkote's legal dissection is no more than an unpersuasive attempt to gerrymander the case into federal court.

### CONCLUSION

We are satisfied that Flintkote has failed to carry its burden as to any of the three grounds it advanced in opposition to the motion to remand. We are further persuaded of the correctness of our decision by two general rules which inform the entire controversy now before us: namely, that "the removal statute is to be strictly construed," *Hopkins Erecting Co. v. Briarwood Apartments* (E.D.Ky.1981) 517 F.Supp. 243, 351–52, and the correlative notion that "where the basis for jurisdiction is doubtful, the court should resolve such doubt in favor of remand." *Charrier v. Bell* (M.D.La.1982) 547 F.Supp. 580, 583 (citing cases). *Accord, Fajen v. Foundation Reserve Ins. Co.* (10th Cir.1982) 683 F.2d 331, 333 (citing cases). The object of these admonitions is, of course, to prevent us—a court of only limited jurisdiction—from treading on forbidden jurisdictional turf. *See American Fire & Cas. Co. v. Finn, supra,* 341 U.S. at 17–18, 71 S.Ct. at 541–42. However, they also have the practical effect of conserving judicial resources. The question of subject-matter jurisdiction can, after all, be raised by the parties or even by the court at any stage of the proceedings. *Knight v. Hellenic Lines* (E.D.N.Y.1982) 543 F.Supp. 915, 917. It would therefore ill behoove us to retain the action if there is the slightest doubt as to our power to entertain it, and then face the possibility of jurisdictional dismissal by a higher court after the litigation had been fully concluded. *See, e.g., American Fire & Cas. Co. v. Finn, supra,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702; *La-*

*Chemise Lacoste v. Alligator Co.* (3d Cir. 1974) 506 F.2d 339.

Accordingly, plaintiff's motion to remand this action to the Supreme Court of the State of New York, Westchester County, is GRANTED.

SO ORDERED.