HARFORD COUNTY,
MARYLAND, Plaintiff,

v.

HARFORD MUTUAL INSURANCE
COMPANY, et al., Defendants.

Civ. No. S 90–2370.

United States District Court,
D. Maryland.

Oct. 19, 1990.

Victor K. Butanis, County Atty., Jefferson L. Blomquist, Asst. County Atty. for Harford County, Bel Air, Md.

Joseph D. Tydings, Jerold Oshinsky, Geri Weiseman, Anderson, Kill, Olick & Oshinsky, Washington, D.C., for plaintiff.

William F. Ryan, Jr., Whiteford, Taylor & Preston, Baltimore, Md., for Harford Mut. Ins. Co.

Inez Smith Reid, Pamela Bresnahan, William Evans, Robin Kofsky, Carol O'Riordan, Washington, Perito & Dubuc, Washington, D.C., for The Home Ins. Co.

Joseph Brenner, W. Scott Blackmer, Dennis M. Flannery, John J. Kim, Wilmer, Cutler & Pickering, Washington, D.C., for Ins. Co. of North America.

### MEMORANDUM

SMALKIN, District Judge.

This matter is before the Court on plaintiff's motion to remand this action to state court. Two of the defendants, The Home Insurance Company and Insurance Company of North America, have filed an opposition to plaintiff's motion. No oral hearing is needed. Local Rule 105.6, D.Md.

### *Background*

Plaintiff, Harford County, Maryland, commenced this insurance coverage action against defendants, Harford Mutual Insurance Company ("Harford Mutual"), The Home Insurance Company ("The Home"), and Insurance Company of North America

("INA"), in the Circuit Court for Harford County, Maryland, on August 8, 1990. Harford Mutual is a Maryland corporation; The Home and INA are not. Between 1958 and 1983, these insurance companies, at various times, issued Harford County primary property and comprehensive general liability insurance policies. Plaintiff initiated this action to determine defendants' obligations to defend and indemnify plaintiff for present and future claims against it arising out of alleged groundwater contamination from four County landfills.

On September 10, 1990, defendants, The Home and INA, removed the action to this Court pursuant to 28 U.S.C. § 1441(c). On September 21, 1990, plaintiff moved to remand the case to the Circuit Court for Harford County pursuant to 28 U.S.C. § 1447(c), and for an award of its costs and expenses, including attorneys' fees, incurred as a result of the removal.

### Discussion

Plaintiff premises its motion for remand on the theory that this Court lacks subject matter jurisdiction over this case because complete diversity among the parties, required by 28 U.S.C. § 1441(b), does not exist, and the claims are not separate and independent as required by 28 U.S.C. § 1441(c).

■■■ Defendants have the burden of establishing that removal is proper. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). The Court determines whether a basis for removal exists by examining plaintiff's claims. *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). "[T]he grounds for removal must inhere in the plaintiff's claim rather than in a defense or counterclaim." 14A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure*, § 3721, at 208 (1985).

### 28 U.S.C. § 1441(b)

Plaintiff seeks relief against one non-diverse and two diverse defendants. Removal based on diversity of citizenship, § 1441(b), is concededly not available be-

cause defendants cannot remove an action when any of the defendants are citizens of the state in which the action was brought. Plaintiff and one of the defendants are Maryland citizens. *See* 28 U.S.C. § 1441(b) (1988).

### 28 U.S.C. § 1441(c)

■■■ Defendants argue that plaintiff's claims are "separate and independent" within the meaning of 28 U.S.C. § 1441(c) and are, therefore, properly removable, notwithstanding incomplete diversity among the parties.

28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Defendants point out that diversity exists between Harford County and The Home, which is incorporated under the laws of New Hampshire and has its principal place of business in New York, and between Harford County and INA, which is incorporated under the laws of Pennsylvania and has its principal place of business in that state. They note that if these defendants were sued individually, subject matter jurisdiction would exist. Their position is that plaintiff is suing to seek declarations of rights under separate insurance contracts, which suits would be removable if sued upon alone, and therefore, the entire case is removable under § 1441(c).

### The Finn Standard

Any discussion of § 1441(c) must begin with the Supreme Court's interpretation of that statute in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). *Finn* was decided shortly after § 1441(c) was enacted, and the Court began its analysis by discussing the reasons Congress amended the previous statutory scheme. The Supreme Court stated that "[o]ne purpose of Congress in

adopting the 'separate and independent claim or cause of action' test ... was to limit removal from state courts." *Finn,* 341 U.S. at 9–10, 71 S.Ct. at 538. The Court went on to apply § 1441(c) in light of this goal, and to establish what has come to be known as the "single wrong" test. "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under 1441(c)." *Id.* at 14, 71 S.Ct. at 540. The Court made it clear that under the new standard there must be more than the mere "separable controversy" that existed previously. The term "separate cause of action" is more restrictive and the "addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts...." *Id.* at 9–10, 71 S.Ct. at 538.

As a result of the *Finn* decision, the vast majority of courts have viewed the Supreme Court's interpretation of § 1441(c) as counselling a restrictive approach to removal under that statute. *See Paxton v. Weaver,* 553 F.2d 936, 938–939 (5th Cir. 1977); *Am. Mut. Liab. Ins. Co. v. Flintkote Co.,* 565 F.Supp. 843, 847 (S.D.N.Y. 1983); 14A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure,* § 3724, at 360–61 (1985). In fact, "[m]ost commentators agree that few, if any, diversity cases can be properly removed under Section 1441(c) in light of the construction placed on the statute by" *Finn. Id.* at 367.

Application of the "Single Wrong" Test

Several courts have recently addressed whether claims involving multiple primary and excess insurance policies were separate and independent. In *Flintkote,* the Southern District of New York, in an extensive analysis of the history of § 1441(c) as it has been applied in insurance-related cases, noted that "courts have been generally steadfast in their refusal to accept the contention that a particular claim was 'separate and independent' under § 1441(c) so long as such claim was even arguably related to the parties' underlying relationships."

565 F.Supp. at 849. The court also pointed out "that claims are not 'separate and independent' merely because the complaint contains separate prayers for relief, alternative prayers for relief, multiple theories of recovery, or separate counts. Nor is the characterization dependent on ... whether plaintiff sues defendants jointly, severally, or jointly and severally." *Id.* at 848 (citations omitted).

In *Sequa Corp. v. Aetna Casualty & Surety Co.,* No. 89–234 (D.Del. Jan 18, 1990), the United States District Court for the District of Delaware remanded the case to state court because the policyholders' claims against 43 insurance companies were held to arise out of a "single wrong." The policyholders' claims were very similar to the plaintiff's claims that are before this Court. In both cases plaintiffs alleged that the insurance companies were liable for present and future losses suffered by plaintiffs growing out of numerous suits for environmental damage. In addition, in both cases the insurance policies that serve as a basis of liability against defendants are standard form comprehensive general liability policies containing nearly identical language.

One defendant in *Sequa,* the Travelers' Indemnity Company, submitted essentially the same argument that The Home and INA put forth in this case, *i.e.,* the plaintiff's action seeks declarations of rights under a number of insurance policies sold at different times by different insurance companies and each declaration of rights constitutes a separate and independent claim. The *Sequa* court, adopting Magistrate Johnson's reasoning, rejected Travelers' argument and held that the policyholders were seeking relief for a single wrong, the denial of insurance coverage. The court quoted the essence of the Magistrate's Report in the following passage:

[Travelers] urges the Court to try to separate out claims based upon Travelers' policies vis-a-vis the policies issued by other insurers, or claims based upon certain discrete years or upon certain policy language related to a single site. In light of the realities of the situation—a continuous, serial process of envi-

ronmental harm and the overlap of defendants' coverages—the contention that the resolution of any such claims is not dependent upon the resolution of all such claims is untenable. Plaintiffs here ... seek relief for a single wrong, the failure to pay compensation (via overlapping insurance protection) for a loss (liability on the environmental actions).

*Sequa,* No. 89–234 at 4 (quoting Magistrate's Report and Recommendation, at 20).

Other courts addressing the issue have used similar reasoning to remand policyholders' claims against multiple insurance companies. In *CIBA–Geigy Corp. v. Liberty Mutual Insurance Co.,* No. 88–405 (D.N.J. Apr. 20, 1988), the United States District Court for the District of New Jersey adopted the Magistrate's holding that the plaintiff's claims against several insurance companies were not separate and independent within the meaning of § 1441(c). The Magistrate stated that the plaintiff " 'is seeking a declaratory judgment in respect of a single continuing wrong, the insurers' failure to honor their interrelated coverage of environmental claims that have arisen or will arise from its activities during relevant coverage periods.' " *Id.* at 21–22 (quoting plaintiff's brief at 19).

Defendants correctly assert that Harford County's claims differ from plaintiff's claims in the cited cases. In those cases, the claims against the insurance companies generally involved primary and excess liability policies. Both the primary and excess liability insurers are obviously affected by any claim for environmental damage at a particular location during a fixed period of time. Harford County's claims, in contrast, involve insurance policies that were issued consecutively rather that concurrently. Harford County obtained insurance from INA between November 15, 1958 and January 1, 1965; from Harford Mutual between January 1, 1965 and September 1, 1980; and from The Home between September 1, 1980 and September 1, 1983. Defendants argue that because the various policies issued by each defendant do not overlap with the policies issued by other defendants, the claims asserted by Harford County are separate and independent.

However, the fact that the insurance policies were issued consecutively rather than concurrently does not alter the conclusion that there are common factual and legal issues that create a substantial relationship between the claims. For example, all three defendants provided insurance to Harford County during a period in which the County operated the Tollgate Landfill. As a result of groundwater contamination of areas surrounding the landfill, the County has incurred, and will continue to incur, expenses to investigate and contain any off-site pollution and to compensate those injured by the environmental harm. A common factual issue exists over when the environmental impairment occurred. It is entirely possible that the pollution took place during a time period that would extend to all or at least two of the policies. Under these circumstances, the determination of the liability of one defendant will obviously affect the liability of the other defendants. As Magistrate Robinson stated in *Sequa,* "the contention that the resolution of any such claim[ ] is not dependent upon the resolution of all such claims is untenable." *Sequa,* No. 89–234 slip op. at 4 (quoting the Magistrate's Report and Recommendation, at 20).

Similarly, all three defendants provided insurance during the period that the County operated the Old Scarboro Landfill, and Harford Mutual and The Home provided insurance during the period that the County operated the Bush Valley Landfill. Once again, the determination of the amount of environmental harm that occurred while a particular defendant was providing coverage creates an interrelationship between the plaintiff's claims and the liabilities of defendants.

The cases that defendants cite in support of their proposition that Harford County's claims are separate and independent are unpersuasive. *Baltimore Gas & Electric Co. v. U.S. Fidelity & Guaranty Co.,* 159 F.Supp. 738 (D.Md.1958), and *Breslerman v. American Liberty Insurance Co.,* 169 F.Supp. 531 (E.D.N.Y.1959), were decided

over thirty years ago and, since then, they have been uniformly distinguished or criticized by courts and scholars. *See Flintkote*, 565 F.Supp. at 849; 14A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure*, § 3724, at 382–83 (1985) (noting that a strong argument can be made that the removal statute was applied erroneously in these cases). In deciding to permit removal, the court in *Baltimore Gas & Electric Co.* appears to have been motivated by considerations of judicial economy and the understanding that all of the parties wanted to remain in federal court. *Baltimore Gas & Electric Co.*, 159 F.Supp. at 740. *Breslerman* is also clearly distinguishable from the present case. In *Breslerman* there was complete diversity among the parties. Section 1441(c) was used as the basis for removal, to avoid the plaintiff's argument that § 1441(b) prevents a defendant from removing a suit from the courts of a state of which that defendant is a citizen. The decision primarily focuses on whether a court should remove the otherwise unremovable claims once the court has determined that there are separate and independent claims that are removable. *Breslerman*, 169 F.Supp. at 533–34.

In summary, Harford County's claims against INA and The Home are not separate and independent from the claims against Harford Mutual. The common issues of fact that require a determination of the extent of environmental harm that occurred when each defendant provided insurance create an interrelationship of plaintiff's claims against defendants. As Magistrate Hedges stated in *CIBA–Geigy Corp.*, the single wrong at issue in this case is "the insurers' failure to honor their interrelated coverage of environmental claims that have arisen or will arise from activities during the relevant coverage periods." *CIBA–Geigy Corp.*, No. 88–405 at 21–22.

■ For the reasons stated above, this case must be hereby remanded pursuant to 28 U.S.C. §§ 1441 and 1447 to the Circuit Court for Harford County, Maryland. Plaintiff is to be awarded court costs in connection with the removal and remand of this case. Because, however, there has been no showing that the defendants acted in bad faith in seeking removal, plaintiff's request for attorneys' fees will be denied. *See Medical Legal Consulting Service, Inc. v. Covarrubias*, 648 F.Supp. 153 (D.Md.1986); *cf. Ehrlich v. Oxford Insurance Co.*, 700 F.Supp. 495 (N.D.Cal.1988).

An appropriate order will be entered separately.