MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Appellant, v MEDICAL LIABILITY MUTUAL INSURANCE COMPANY, Respondent.

First Department, May 18, 1982

#### APPEARANCES OF COUNSEL

*Norman Bard, P. C.,* for appellant.

*Howard R. Cohen* of counsel (*Barry G. Saretsky* with him on the brief; *Bower & Gardner,* attorneys), for respondent.

#### OPINION OF THE COURT

SULLIVAN, J.

On December 5, 1976 Daniel Rockwell was admitted to the cardio-pulmonary service of the Upstate Medical Center, State University of New York, which is maintained by the State of New York.

The next day he underwent a surgical procedure during the course of which, while under anesthesia, he suffered cardiac arrest with resultant brain damage.

In July, 1977, Rockwell, an adult incapable of prosecuting his rights, by his father and natural guardian, commenced a malpractice action in the Court of Claims against the State of New York. Among the doctors identified in a bill of particulars as having negligently participated in the surgical procedure was Dr. Frederick Parker, while Dr. Roland Couche was named as one of two anesthesiologists involved. Both doctors were employed by the State and assigned to the Upstate Medical Center.

At the time of the surgery the State University of New York, Upstate Medical Center was the named insured under a Hospital Professional Liability Insurance policy with $1,000,000/$3,000,000 limits issued by plaintiff Medical Malpractice Insurance Association (MMIA). Since coverage was extended to physicians and surgeons employed by the Upstate Medical Center both Dr. Parker and Dr. Couche were covered under MMIA's policy as additional insureds.[1] MMIA undertook the defense of the Court of Claims action in which only the State of New York was named as a defendant.[2] Doctors Parker and Couche were also individually insured under separate, but identical, policies of medical malpractice liability insurance with $1,000,000/$3,000,000 limits underwritten by defendant Medical Liability Mutual Insurance Company (MLMIC). The doctors' policies did not cover the State of New York or the Upstate Medical Center.

On or about November 7, 1979, MMIA, citing the "substantial involvement and exposure of both of your insureds [Doctors Parker and Couche] in this matter", invited MLMIC to participate in negotiating a settlement of the Court of Claims action against MMIA's insured, "the Upstate Medical Center and the State of New York." MLMIC, which had opened its own file and had conducted an independent investigation as early as August, 1977, declined. On November 28, 1979, MMIA settled the Court of

---

**1.** The personal acts or omissions of a professional nature of such individual insureds were excluded.

**2.** Although it may adjudicate the State's counterclaims, the Court of Claims lacks jurisdiction to entertain an action against a party other than the State. (Court of Claims Act, § 9; see, e.g., *Braun v State of New York,* 203 Misc 563.)

Claims action for the sum of $750,000.[3] Pursuant to the order approving the settlement, the State of New York received a stipulation of discontinuance and releases in exchange for its payment of the agreed amount.

MMIA thereafter commenced an action against MLMIC, alleging that MLMIC was obligated to contribute such proportion of the settlement and legal fees and disbursements as purportedly represented the percentage of responsibility attributable to Doctors Parker and Couche. After MLMIC interposed an answer, which included several affirmative defenses, MMIA moved for partial summary judgment limiting the issues for trial (CPLR 3212, subd [g]) and for summary judgment dismissing the affirmative defenses (CPLR 3211, subd [a], par 6; subds [b], [c]). Special Term granted MLMIC's cross motion for summary judgment dismissing the complaint, from which determination this appeal is taken. We affirm.

MMIA rests its claim for the recovery of that portion of the settlement which it allegedly paid on behalf of Doctors Parker and Couche on the ground that, since MMIA and MLMIC were concurrent insurers, they must apportion the loss between them in accordance with the "other insurance" clauses of their respective policies, by the clear language of which MMIA was the excess and MLMIC the primary insurer.[4] Thus, MMIA argues, since it made a payment which should have been made by MLMIC, it has an equitable right to contribution. MMIA also seeks to enforce the rights of its insureds, both the State of New York and Doctors Parker and Couche, to which it became equitably subrogated as a result of discharging their legal obligations.

Before the insurer of one policy may enforce a right of contribution against another insurer on the ground of concurring coverage, the insurance provided by each must

---

3. $660,000 was to be paid to the claimant Daniel Rockwell, and $90,000 to his father for medical expenses and loss of services.

4. MMIA's policy contained an excess clause which provided, "The insurance afforded by this policy is excess over any other valid and collectible insurance available to the insured", while MLMIC's policy contained a pro rata clause which restricted its liability to the proportion that its policy limit bore to the total applicable amount of insurance covering the loss.

cover "the same interest and against the same risk." (*Continental Ins. Co. v Commercial Union Ins. Co.*, 27 AD2d 333, 336.) The risk at issue was the malpractice claim and the State's potential liability therefor. MLMIC covered the liability of Doctors Parker and Couche, but not the liability of either the State of New York or the State University, Upstate Medical Center. Only MMIA's policy covered the State, the only defendant in the underlying medical malpractice action, as well as the only party against whom Rockwell asserted a claim. Thus, MMIA and MLMIC were not concurrent insurers.

The cases cited by MMIA in support of its argument are inapplicable. In *General Acc. Fire & Life Assur. Corp. v Piazza* (4 NY2d 659), for example, where the loss was apportioned in accordance with the other insurance clauses of the respective policies, each policy contained an omnibus clause extending coverage to any person lawfully using the insured motor vehicle and any party legally responsible for its use. Thus, unlike here, the defendants in the underlying personal injury action were insured under both policies.

Similarly, in *Matter of Country-Wide Ins. Co. v Wagoner* (45 NY2d 581), where both policies covered the uninsured motorist claim of a motorcyclist injured by a hit-and-run driver, recourse was had to the other insurance clauses to determine whether the respective policies were applicable on a pro rata or a primary-excess basis. (See, also, *Argonaut Ins. Co. v Continental Ins. Co.*, 63 AD2d 927.)

MMIA also argues that by settling the malpractice action it became subrogated to any rights of the State of New York and of Doctors Parker and Couche. Subrogation "has been called the 'mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.' " (*Pittsburgh-Westmoreland Coal Co. v Kerr*, 220 NY 137, 144.) An equitable doctrine, subrogation recognizes a right of recovery where "one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the

protection of some interest of the party making the payment, and in discharge of an existing liability." (*Gerseta Corp. v Equitable Trust Co. of N. Y.*, 241 NY 418, 425-426, citing Seldon, Subrogation [2d ed], pp 2, 4.)

A subrogee, however, acquires no greater rights than the one in whose stead it is substituted. (*State Bank of Albany v Dan-Bar Contr. Co.*, 12 AD2d 416, 418, affd 12 NY2d 804.) Since the State was not covered by MLMIC's policies,[5] it does not have any rights thereunder with respect to the Rockwell claim to which MMIA could be subrogated. Nor may MMIA, as the State's subrogee, attempt to hold MLMIC liable on the basis of any claim that the State may have asserted against its negligent employees, MLMIC's insureds, Doctors Parker and Couche, for contribution,[6] since the State has been released from liability by Rockwell. "A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." (General Obligations Law, § 15-108, subd [c].)

MMIA's claimed status as the subrogee of Doctors Parker and Couche cannot withstand scrutiny either, since, as already noted, the doctors were not parties to the underlying malpractice action, and thus had no legal obligations which MMIA could have discharged.[7] Indeed, the doctors were not even named in the releases executed as part of the settlement.

---

5. The State cannot claim third-party beneficiary status under MLMIC's policies in the absence of a clearly manifested intent to benefit the State. (See *Salzman v Holiday Inns*, 48 AD2d 258, mod 40 NY2d 919.)

6. In its brief MMIA claims subrogation rights based on the State's right to seek indemnity from its actively negligent employees, Doctors Parker and Couche. As MMIA's complaint makes clear, however, the relief sought is contribution for such portion of the settlement and legal fees and disbursements incurred as the percentage of responsibility of Doctors Parker and Couche bears to the total thereof.

Moreover, we note that the assertion of such claim in the Court of Claims was procedurally barred. The impleader of a third party for the purpose of allowing the State to assert a claim against such third party is not authorized since such third party has a right to have the State's claim against him determined in a court of general jurisdiction where right to trial by jury exists. (*Horoch v State of New York*, 286 App Div 303, resettled 286 App Div 977.)

7. MMIA's suggestion that it is entitled to act as the subrogee of Doctors Parker and Couche as it "protected" them from the potential effects of *res judicata* in any subsequent action against them is without merit since, not being parties to the medical malpractice

Even if a factual basis existed to support MMIA's claim to be the subrogee of Doctors Parker and Couche, its claim would still fail in the absence of any showing of a breach by MLMIC of any obligations MLMIC owed to the doctors under its policies. If the doctors, as MLMIC's insureds, have no claim against it for breach of any obligation under the policy, then neither has MMIA, as their purported subrogee.

The MLMIC policy issued to both Doctors Parker and Couche obligated the insurer "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay". The doctors were not parties to the medical malpractice action and while the settlement may have encompassed, in part, their alleged acts of negligence, charged vicariously to the State, it could not include a claim which had never been asserted against them. Since the doctors were never legally obligated to pay damages, MLMIC never incurred an obligation to indemnify them.

MMIA argues that its subrogation rights are not dependent upon a finding that MLMIC had a duty to indemnify since an insurer's duty to defend is greater than its obligation to indemnify, and that the duty to defend may attach even in situations where it is ultimately determined that no obligation to indemnify exists. (See *Summer & Co. v Phoenix Ind. Co.,* 177 Misc 887, affd 265 App Div 911.) This generally accepted proposition is not germane, however, to the instant proceeding, because the doctors were not defendants in any legal proceeding, as were the insureds in the cases upon which MMIA relies. Nor was a claim ever asserted against them.

For example, in *Goldberg v Lumber Mut. Cas. Ins. Co. of N.Y.* (297 NY 148), the insured had informed his insurer that he was not responsible because he had left the job site prior to the accident which gave rise to the suit, while in *Commercial Pipe & Supply Corp. v Allstate Ins. Co.* (36 AD2d 412), the insured had advised his insurer that the

action in the Court of Claims, they would not have been bound by any determination reached therein. (See *Sea Ins. Co. v U.S. Fire Ins. Co.,* 71 AD2d 51, 54; *People v Delaware & Hudson R.R. Corp.,* 42 AD2d 618; see, also, Siegel, New York Practice, § 470, pp 630-631.)

suit against him was defensible as the accident in question had not occurred on his premises. In both cases the insurers took the position that, since their insureds were apparently not liable and the insurers consequently would not be responsible for indemnification, they had no obligation under their respective policies, not even the duty to defend. In each instance the court held that the obligation to defend arose once a proceeding was instituted against the insured, even if it appeared that the defense would be successful and that the insurer would never be obligated to indemnify.[8]

Nor is our view altered in any way by the holding in *Simon v Maryland Cas. Co.* (353 F2d 608). There, the insured was a subcontractor under a contract with the United States Government. The Government, charging that negligence on the part of the subcontractor's employees had caused extensive property damage, withheld, as damages, a substantial sum from the amount owed to the contractor, who, in turn, withheld money due to the subcontractor. The subcontractor authorized the contractor to proceed on its behalf against the Government, and agreed to share litigation expenses. The subcontractor requested its insurer to protect its interest by participating in the proceedings on its behalf, but the insurer declined on the ground that a claim had not been filed against the subcontractor. The Circuit Court held that although the form of the litigation was "unorthodox" the subcontractor was a litigant, and was seeking to avoid damages — the withholding of moneys due — which were predicated upon allegations of negligence. The court further found that the Court of Claims determination that the subcontractor had been negligent and that the withholding of money was proper was tantamount to a determination of liability and the entry of judgment against the insured subcontractor in a legal proceeding. Thus, unlike here, the insured had been a litigant in a proceeding and was attempting to avoid the

---

**8.** Several other cases upon which MMIA relies are also not persuasive for the same reasons. (See *American Home Assur. Co. v Port Auth. of N. Y. & N. J.*, 66 AD2d 269; *Sucrest Corp. v Fisher Governor Co.*, 83 Misc 2d 394; *Chatham Corp. v Argonaut Ins. Co.*, 70 Misc 2d 1028; *Brooklyn & Queens Allied Oil Burner Serv. Co. v Security Mut. Ins. Co.*, 27 Misc 2d 401.)

imposition, albeit through the withholding of moneys, of monetary damages. The same analysis applies to *Clarke v Fidelity & Cas. Co. of N. Y.* (55 Misc 2d 327), upon which MMIA also relies, since the insured in that case had been vouched into the litigation. Because a claim was never asserted against Doctors Parker and Couche, a duty to defend never arose.

Accordingly, the order of Supreme Court, New York County (WILLIAMS, J.), entered July 16, 1981, granting defendant's cross motion for summary judgment dismissing the complaint, should be affirmed, with costs and disbursements.

MURPHY, P. J., KUPFERMAN, CARRO and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on July 16, 1981, unanimously affirmed. Respondent shall recover of appellant $75 costs and disbursements of this appeal.