[No. B126506. Second Dist., Div. Four. July 12, 1999.]

AMERICAN CONTINENTAL INSURANCE COMPANY, Plaintiff and
Respondent, v.
AMERICAN CASUALTY COMPANY OF READING, PA., Defendant
and Appellant.

COUNSEL

Radcliff, Frandsen & Dongell, Richard A. Dongell, Ruben A. Castellon and Jason M. Booth for Defendant and Appellant.

Cotkin & Collins, Terry C. Leuin and Scott P. Ward for Plaintiff and Respondent.

OPINION

**EPSTEIN, J.**—The issue in this case is the allocation of responsibility between insurers for settlement of an underlying action for wrongful death. The defendant hospital and defendant nurse were found jointly liable by jury verdict. The verdict did not allocate fault. Both the hospital and its employee, the nurse, were covered by primary and excess insurance policies issued by American Continental Insurance Company (American Continental). The nurse also was covered by an individual policy issued by American Casualty Company of Reading, Pa. (American Casualty). American Continental paid the entire settlement of the underlying case, then obtained a judgment from the trial court in this action for declaratory relief requiring American Casualty to reimburse it for the amount it paid in excess of the first $1 million of the settlement.

As originally briefed, the parties argued over their rights of subrogation. American Casualty argued that American Continental, as the hospital's insurer, must pay the entire amount because the hospital was ultimately liable in the underlying action under Labor Code sections 2800 and 2802.[1] These statutes require an employer to indemnify its employee for "losses caused by the employer's want of ordinary care." American Continental relied upon section 2865 which requires a negligent employee to indemnify his or her employer.

We asked counsel to address the issue of equitable contribution. Based on that doctrine, we affirm the judgment. In light of our conclusion that American Casualty must contribute to the settlement of the underlying action, we need not, and do not, reach its arguments regarding subrogation based on the rights of the hospital and the nurse to indemnity under the Labor Code.

FACTUAL AND PROCEDURAL SUMMARY

The appeal arises out of a wrongful death case, in which Henry Mayo Newhall Hospital (the Hospital) and Nurse Michelle Gorman were found

[1]All further statutory references are to the Labor Code unless otherwise indicated.

jointly liable for the death of Frank Wood. The Hospital had two policies with American Continental. The primary policy (No. 92K333) provided $1 million coverage for both the Hospital and its employees while acting within the scope of their duties. That policy covered Ms. Gorman as an employee. The second umbrella policy (No. 92L333) had a $10 million limit. Ms. Gorman was individually insured by American Casualty for $1 million (policy No. N-4638848). American Continental retained an attorney to defend both the Hospital and Ms. Gorman. American Casualty was informed of the action, but did not provide or contribute to a defense for Ms. Gorman.

American Continental contacted American Casualty, providing summaries of discovery in the case and outlining the status. American Continental said that it had offered its full $1 million primary policy in settlement and warned that the damages were likely to exceed that policy's limits. American Continental asked American Casualty to pledge its $1 million policy limit for settlement negotiations. Ms. Gorman also sent a written demand to American Casualty asking it to settle the Wood case. One month before the trial started, American Casualty had not responded.

The Wood case went to trial. The jury returned a verdict finding that both the Hospital and Ms. Gorman were negligent. The verdict was joint and several and did not allocate fault between the defendants. American Continental settled the Wood action on behalf of Ms. Gorman and the Hospital for $1,686,000. The settlement was made before judgment could be entered on the jury verdict.

American Continental then instituted this action against American Casualty for declaratory relief. The trial court found that Ms. Gorman's policy with American Casualty is a primary policy, as is the Hospital's policy No. 92K333 with American Continental, and that the umbrella policy issued by American Continental to the Hospital (No. 92L333) is an excess policy. Based on that conclusion, the court found that the American Continental primary policy was responsible for the first $1 million of the settlement of the Wood action and that the American Casualty policy is responsible for the remainder of the Wood settlement under the doctrine of equitable contribution. American Casualty has appealed from the ensuing judgment.

## DISCUSSION

On appeal, the parties treat this case as turning on rights to subrogation. We do not agree with that analysis. Instead, we conclude that the respective rights of the parties must be resolved by the application of the principles of equitable contribution. A recent case, *Fireman's Fund Ins. Co.*

v. *Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296], provides guidance. In that case, the court distinguished between the concepts of equitable contribution and equitable subrogation in determining the rights of two insurance companies which had provided primary insurance on the same risk to the same insured.

■ "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at p. 1292.)

■ In contrast, "[Equitable contribution] is the right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]" (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at pp. 1293-1294, fn. omitted, italics in original.)

■ Each insurer has an individual right of equitable contribution. (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at p. 1294.) "It is not based on any right of subrogation to the rights of the insured, and is not equivalent to ' "standing in the shoes" ' of the insured. [Citations.] Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of

indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance policies." (*Ibid.*)

As we have discussed, American Continental's primary policy insured both the Hospital and Nurse Gorman. This policy had a $1 million limit. Nurse Gorman also had $1 million coverage with American Casualty. The American Casualty policy provides: "We will pay all amounts up to the limit of liability, which **you** become legally obligated to pay as a result of **injury** or **damage** to which this insurance applies. The **injury** or **damage** must be caused by a **medical incident** arising out of **professional services** by **you** or anyone for whose **professional services you** are legally responsible." (Boldface in original.)

■ "Primary coverage provides immediate coverage upon the 'occurrence' of a 'loss' or the 'happening' of an 'event' giving rise to liability. [Citation.] It is defined as 'insurance coverage whereby, *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. . . .' " (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th at p. 1304, italics in original.) ■ Based on this definition, we are satisfied that both the American Casualty policy and American Continental policy No. 92K333 provided primary insurance to Nurse Gorman applicable to the loss resulting from the settlement of the Wood action. They were thus coinsurers of Nurse Gorman. The fact that the Hospital was also insured by American Continental's primary policy does not affect the rights of contribution since the Hospital and Nurse Gorman were jointly liable for the underlying loss.

The American Casualty policy contains an other insurance clause: "If there is other insurance which applies to the loss resulting from **your professional services**, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than: [¶] A. the limits of liability of the other insurance; and [¶] B. the total of all deductibles and self-insured amounts under all such other insurance." (Boldface in original.) This is an "excess only" type of other insurance clause. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1997) ¶ 8:19, p. 8-5.)

But the American Continental primary policy also contains an other insurance clause: "6. The insurance afforded by this policy is primary

insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. [¶] a. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance. [¶] b. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below: [¶] (i) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid. [¶] (ii) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss." (Boldface in original.) This is a "pro rata" type of other insurance clause. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra*, ¶ 8:16, p. 8-4.)

Where there is a conflict between an "excess only other insurance" clause of the type found in the American Casualty policy with a "pro rata other insurance" clause of the type found in the American Continental policy, the current trend of jurisprudence in California is to prorate settlement and defense costs between the two policies. (Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra*, ¶ 8:27, pp. 8-6 to 8-7.) As the court in *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.*, *supra*, 65 Cal.App.4th 1279, observed, the Supreme Court has not formulated a definitive rule to address such a conflict. (65 Cal.App.4th at p. 1305, discussing *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75].)

The court in *Fireman's Fund* reasoned: "Although it is difficult to harmonize the many cases dealing with this situation, several recent opinions of the Courts of Appeal have held that in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution, the

‘excess-only’ policies must contribute pro rata to the coverage afforded by the ‘proration-only’ policies. [Citations.]” (65 Cal.App.4th at p. 1305.)

But here, as we have discussed, the American Continental policy provided that its exposure was not to be reduced by the existence of other insurance: “When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company’s liability under this policy shall not be reduced by the existence of such other insurance.”[2] (Boldface in original.) Therefore, American Continental’s primary policy is responsible for $1 million of the settlement, and American Casualty is responsible for the remainder, $686,000. The Hospital’s excess umbrella policy is not reached.

### DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

---

[2]American Continental makes no claim under paragraph 6b of its primary policy for a fifty-fifty allocation of responsibility for the settlement. We express no opinion on whether American Continental would have been entitled to such an allocation under the terms of these policies.