[No. B138343. Second Dist., Div. Three. Jan. 30, 2001.]

AMERICAN CONTINENTAL INSURANCE COMPANY, Plaintiff and Appellant, v.
AMERICAN CASUALTY COMPANY OF READING, PA, Defendant and Respondent.

930

**COUNSEL**

Cotkin & Collins, Terry C. Leuin and Douglas A. Greer for Plaintiff and Appellant.

Ross, Dixon & Bell, Alec M. Barinholtz and J. Kirk Donnelly for Defendant and Respondent.

**OPINION**

**CROSKEY, J.**—In this action between two insurers we are presented with an issue arising under the doctrine of equitable contribution which is a matter of first impression in California. The basic facts may be summarized as follows: Insurer A provides professional liability insurance to a hospital and its employees. One of those employees is a nurse who also has her own professional liability insurance with Insurer B. A claim of malpractice is made against the hospital and its employees arising out of a medical procedure in which the nurse was involved and in which she was *allegedly* negligent, but the claim and the lawsuit which followed do not name or refer to the nurse. Insurer A defends and settles the suit, but Insurer B refuses to participate. Insurer A then seeks to recover from Insurer B the latter's "fair share" of the indemnity and defense costs incurred in settling the malpractice

claim made against the hospital and its employees (which necessarily included the nurse). The issue presented to us is, under these factual circumstances, does Insurer B have any liability to Insurer A? We conclude it does not.

The plaintiff and appellant, American Continental Insurance Company (ACIC), seeks reversal of the trial court's order dismissing its complaint for equitable contribution against the defendant and respondent, American Casualty Company of Reading, PA (American Casualty). After a review of the novel facts presented by this case, we find ourselves in agreement with the trial court's conclusion.

We hold that where an insurer was never under any legal obligation to provide coverage under a policy of liability insurance, that insurer may not be required to contribute to the defense or indemnity costs which may have been incurred by a second insurer in defending and settling an action for medical malpractice allegedly arising, at least in part, from the negligent acts of a common insured who was not named as a defendant in said suit and against whom no claim of negligence was ever made. We also reject ACIC's contention, based on a contrary decision reached on similar facts by an Arizona court in a case between these same two parties, that principles of collateral estoppel preclude American Casualty from litigating the issue of its liability for equitable contribution.

We therefore affirm the trial court's order of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On or about July 27, 1996, Sarah Chatfield (Chatfield) was a nurse employed by Huntington Memorial Hospital (Hospital). On that date, she was one of Hospital's employees involved in the treatment and care of Cecilia Gavino during the delivery of her son, Andrew. Chatfield was responsible for monitoring Andrew's condition during labor and interpreting the "fetal monitoring strip." During labor Andrew suffered fetal distress and oxygen deprivation which resulted in his being born with neurological damage and severe cerebral palsy.

---

[1]The relevant facts are apparently not in dispute and are established by the record before us. In any event, as this case comes to us after the sustaining of American Casualty's demurrer to ACIC's first amended complaint (the operative pleading), we will accept the allegations set out therein as true. The issue which we decide is purely one of law.

On April 30, 1997, Cecilia Gavino filed a medical malpractice action against Hospital and four physicians, who apparently had been involved in her care and treatment and Andrew's delivery. Although Chatfield later admitted in a deposition taken in the Gavino litigation that she had failed to recognize the signs of fetal distress displayed on the fetal monitoring equipment and had failed to call the treating physician during the critical hours before delivery, she was never named or served as a defendant in the action; indeed, no claim was ever made against her by Gavino. In her complaint, Gavino had only alleged that professional negligence had been committed by Hospital and "its employees."

ACIC had issued to Hospital two different liability policies. The first was a primary policy providing coverage of up to $1 million per occurrence for claims made against Hospital and its employees, which necessarily included Chatfield. The second policy was an umbrella policy which provided additional coverage of up to $10 million per occurrence. American Casualty had issued a primary professional liability policy to Chatfield which provided her with up to $1 million in coverage.[2] As a result, Chatfield was covered, at least up to $1 million, under the policies of both ACIC and American Casualty.

Hospital tendered the Gavino action to ACIC, which undertook its defense. Prior to settlement discussions, ACIC discovered that Chatfield was personally insured by American Casualty and demanded that it participate in the defense and settlement of the Gavino action. American Casualty refused.[3] On August 21, 1998, ACIC negotiated a settlement of the Gavino action on behalf of Hospital and its employees (which included Chatfield) for the total sum of $3.5 million. ACIC paid $1 million under its primary policy and $1.85 million under its umbrella policy. The remaining $650,000 was paid by or on behalf of the treating physician.

---

[2]The American Casualty policy promised that: "We will pay *all amounts* up to the limit of liability, which *you become legally obligated to pay* as a result of injury or damage to which this insurance applies. . . . [¶] . . . We have the right to and will defend *any claim*." (Italics added.)

"Claim" was defined to mean "the *receipt* of a *demand* for money or services naming you [i.e., Chatfield] and alleging a medical incident." (Italics added.)

"Medical incident" was defined to mean "any act, error or omission in the providing of or failure to provide professional services by you . . . ."

[3]It is not clear from the record whether this was American Casualty's first notice of the Gavino action. As Chatfield had never been named or served in that matter and had not received any claim or demand, she may or may not have known or advised her insurer of the matter at some earlier date.

Following this settlement, ACIC filed this action in which it alleged several causes of action, including declaratory relief and equitable contribution.[4] ACIC alleged the facts which we have summarized above and sought recovery from American Casualty of the $1 million payable under its policy as its pro rata share of the $2.85 million which ACIC had paid to settle the Gavino action and to obtain a full release of liability for Hospital and all of its employees, including Chatfield, who was also American Casualty's insured. American Casualty responded with a demurrer, arguing that because no claim had ever been made against Chatfield and because she had never been named or served in the Gavino action, no obligation to provide coverage under *its* policy had ever arisen and thus there was no basis upon which it could be held liable to ACIC for any part of the sum paid to defend and settle the underlying malpractice action.

The trial court agreed with American Casualty and sustained the demurrer without leave to amend. Judgment was ultimately entered in its favor. ACIC then filed this timely appeal.

## CONTENTIONS OF THE PARTIES

ACIC contends that American Casualty, as the professional liability insurer for Chatfield, was equally "on the risk" for any claim arising from or based on Chatfield's alleged negligence. Since Hospital's liability in the Gavino action arose in part from what ACIC alleges was Chatfield's professional negligence, American Casualty should pay its fair share of that liability which, in this case, would amount to its policy limit of $1 million.[5] ACIC also contends that it has previously litigated this same legal issue with American Casualty in two other cases involving similar facts, one in California and one in Arizona. In both cases, ACIC's equitable contribution claim was sustained. Therefore, ACIC argues, American Casualty is collaterally estopped to deny its liability in *this* matter.

American Casualty disputes both of these arguments. It urges that its duty to provide coverage never arose. Chatfield was never named or served in the Gavino action and no claim was ever made against her. Thus, under settled

---

[4] Although a number of other causes of action were alleged in ACIC's complaint, ACIC is not appealing from their dismissal by the trial court. It asks us to review only the ruling with respect to the declaratory relief and equitable contribution counts. As a practical matter, the declaratory relief claim does not raise any distinct issues, as the only substantive claim actually advanced by ACIC is the one for equitable contribution.

[5] ACIC concedes that the negligence of Chatfield was never proven in the Gavino action and, indeed, was never directly alleged or claimed in that proceeding. ACIC contends, however, that such negligence may be alleged and proven as a necessary part of its equitable contribution claim against American Casualty.

principles of equitable contribution, there could be no liability. American Casualty rejects ACIC's collateral estoppel argument on the ground that the prior California case is factually distinguishable and the Arizona case was decided under Arizona law and, to the extent that it purported to rely on California law, it was wrongly decided. Therefore, it is not binding in this matter.

## DISCUSSION

### 1. Standard of Review

We review here an order of the trial court sustaining a demurrer without leave to amend. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Irrespective of the labels attached by the pleader to any alleged cause of action, we examine the factual allegations of the complaint, to determine whether they state a cause of action on any available legal theory. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947 [36 Cal.Rptr.2d 360]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) If they do, then the trial court's order of dismissal must be reversed. (*Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].) If they do not, then we affirm.

In this case, ACIC asks us to consider only the viability of its alleged causes of action for declaratory relief and equitable contribution. Based on the factual allegations presented, the claim for declaratory relief could only result in a favorable outcome for ACIC if the claim for equitable contribution had merit. It is therefore that claim upon which we must focus. The trial court concluded that no valid claim for such relief had been or could be asserted. Irrespective of the court's reasoning, if that result was correct, we must affirm. (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16 [68 Cal.Rptr.2d 837].)

### 2. Equitable Contribution

In the context of insurance law, the doctrine of equitable contribution may be simply stated. "[W]here two or more insurers independently provide

primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers, . . ." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1289 [77 Cal.Rptr.2d 296].)

The right to contribution depends upon the existence of an obligation owed to a common insured. The right arises when one of two or more insurers is *"obligated to indemnify or defend"* the same loss or claim and one of those insurers has paid more than its share of the loss or defended the action without participation from the others. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1293.) "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally and concurrently owed* by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]"[6] (*Id.* at pp. 1293-1294, italics in original and added, fn. omitted.)

"[T]he reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance policies. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1294.)

One of the firm principles undergirding the doctrine of equitable contribution is that two or more insurers share an *obligation* to the common insured. Every California case of which we are aware has enforced an insurer's contribution claim only where the other insurer was also obligated to pay on the claim. (See, e.g., *Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at pp. 1288-1302 [and cases cited thereat]; *American Continental Ins. Co. v. American Casualty Co.* (1999) 73 Cal.App.4th 508, 513 [86 Cal.Rptr.2d 560] (*American Continental (California)*); *Fire Ins. Exch. v. American States Ins. Co.* (1995) 39 Cal.App.4th 653, 657, 664 [46 Cal.Rptr.2d 135]; *Continental Casualty Co. v. Zurich Ins. Co.* (1961) 57

---

[6]Often the determination of each insurer's proper share of the common burden may be impacted by so-called "other insurance" clauses which provide for specific and/or conditional priorities of obligation or payment. However, such clauses are not a factor here. The amount of the claim satisfied by ACIC and the provisions of American Casualty's "other insurance" clause make it clear that such clause would not affect or diminish ACIC's contribution claim.

Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) On the other hand, where there is no common *obligation that* is legally due from multiple insurers, then no basis for contribution exists. (See *Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 154 [77 Cal.Rptr.2d 642], disapproved on another ground in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229] [loss paid by plaintiff insurer not covered under policy of defendant insurer]; *Great American West, Inc. v. Safeco Ins.* (1991) 226 Cal.App.3d 1145, 1152-1153 [277 Cal.Rptr. 349] [loss payment was made to insured by plaintiff insurer more than four years after the expiration of the one-year time limit in defendant insurer's policy; thus, any claim under defendant's policy was unenforceable]; *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 939 [266 Cal.Rptr. 231] [even though paid by plaintiff insurer, the loss was not covered under any of the policies issued by the multiple insurers involved].)

We conclude from these authorities that in order for American Casualty to be liable to ACIC for equitable contribution, California law requires that it must have had a *legal obligation* to Chatfield to provide her defense and/or indemnity coverage for the Gavino claim or action prior to August 21, 1998, when ACIC settled that action. Therefore, to determine if American Casualty can be held liable for equitable contribution, we must first determine if that coverage obligation ever arose or existed under the policy it issued to Chatfield.

### 3. *American Casualty Never Had Any Obligation to Provide Coverage for the Gavino Claim or Action*

There is no dispute in this record that Chatfield was never named or served as a party defendant in the Gavino action. No claim or demand was ever made upon her nor was it ever claimed in that action that she had any personal liability for the events which led to the tragic injury to Andrew Gavino.

Given that state of the factual record, it is clear, upon examination of American Casualty's policy, that no coverage obligation ever arose. The policy promised to defend "any claim" even if "groundless, false or fraudulent." A "claim" was specifically defined as the "*receipt* of a demand for money or services" which named Chatfield and alleged a medical incident.[7] No such claim was ever received by Chatfield. Thus, American Casualty

---

[7]Obviously, this definition is broad enough to include a formal complaint in a judicial action had one been filed and served naming Chatfield as a party defendant.

never had any duty to *defend* Chatfield with respect to the injury to Andrew Gavino.

The policy also promised to pay "all amounts" which Chatfield became "legally obligated to pay" as a result of the injury to Andrew Gavino. Again, the record demonstrates that this condition never occurred. Indeed, the record reflects ACIC's settlement of the matter which doubtlessly resulted in a dismissal with prejudice of the Gavino action and a complete release of Hospital and all of its agents and employees (which necessarily included Chatfield). Not only did Chatfield never become "legally obligated," she never will. Thus, American Casualty never had any duty to *indemnify* Chatfield with respect to the injury to Andrew.

Obviously, if the obligation to provide coverage under the American Casualty policy never arose, then American Casualty never at any time had any contractual obligation with respect to the Gavino claim or action. And, as we have extensively discussed, if there was no contractual obligation, then there can be no successful assertion of a claim for equitable contribution by ACIC merely because it chose, in the pursuit of its own interests and obligations, to settle the Gavino action by purchasing the peace of *its* insureds, Hospital and Hospital's employees. Under the facts of this case, American Casualty simply was not a "co-obligor" who *shared* a liability with ACIC. American Casualty never had any liability.

ACIC argues that this is not an equitable result. After all, it contends, American Casualty had insured the same risk as had ACIC; they both had issued policies promising coverage for acts of professional negligence that might be committed by Chatfield. ACIC cites *California Food Service Corp. v. Great American Insurance Co.* (1982) 130 Cal.App.3d 892 [182 Cal.Rptr. 67] (*California Food Service*) where the court said, "[t]he equitable contribution doctrine . . . is based on the common sense motion that where two indemnitors share equal contractual responsibilities for a loss, the *selection of which indemnitor is to bear the loss should not be left to the sometimes arbitrary choice of a loss claimant.* [Citation.] More importantly, the indemnitor should not be given the incentive to avoid paying a just claim in hopes that the claimant will obtain payment from the coindemnitor. [Citation.]" (*Id.* at p. 901, italics added.) We are not persuaded that *California Food Service* supports ACIC's argument; there are two reasons why this is so.

First, the *California Food Service* opinion itself assumes a *shared* contractual liability as a prerequisite for application of the equitable contribution

doctrine. In that sense the opinion is consistent with the conclusion that we reach. However, there is a second and more significant reason why *California Food Service* provides no assistance to ACIC.

In *California Food Service*, Sandy's, a restaurant, had a lease that required it to indemnify the building's owner for any fire loss. Sandy's purchased a Highlands Insurance fire insurance policy to satisfy this obligation. Sandy's later sold its interest in the restaurant and assigned its leasehold to another company, CFS, which agreed to indemnify Sandy's in the event that Sandy's was obligated to compensate the building owner for a fire loss. When a fire subsequently damaged the restaurant building, the building owner looked to Sandy's, which called upon Highlands to make good the loss. Highlands paid the loss, and then sued CFS. As the court explained, "[S]ince there was no privity of contract between CFS and the building owners, CFS's obligation was in essence the same as Highlands: a contractual obligation to indemnify Sandy's in the event Sandy's was forced to compensate the building owners." (*California Food Service, supra*, 130 Cal.App.3d at p. 900.) In effect, Sandy's was "insured" both by Highlands and CFS. Thus, in the context of the *California Food Service* court's discussion, "loss claimant" was synonymous with "insured."

This shared identity of the loss claimant and the insured, upon which the analysis in *California Food Service* is based, is important because ACIC's reliance on the case fails to take into account that *California Food Service* is a *first party* case, not a *third party* case as we have here. If we import the *California Food Service* comment regarding the "arbitrary choice of a loss claimant" (where that loss claimant was the "insured") into a third party case (where the loss claimant is the third party tort victim), we will cause both mischief and confusion. It is one thing to say that when the insured in a first party case looks to only one of several insurers who are contractually obligated to satisfy a claim it does not relieve coinsurers of their obligations to contribute to the paying insurer. It is a far different matter to argue, as ACIC does here, that in a third party case the underlying *tort victim's* choice of which defendant to sue has no bearing on which insurer's policies become liable to provide coverage. The underlying tort victim's decision of whom to sue routinely factors into the determination of which insurance policy or policies will become liable to provide coverage. That is simply a result of the recognition that the scope of coverage—both as to whom is insured and the types of claims that are insured—varies from contract to contract.[8]

---

[8]In an analogous context, corporations often are held vicariously liable for the torts of their directors and officers. Yet, where a tort victim elects to bring claims against the corporation, but not the individual directors or officers, such claims are insufficient to justify coverage

We have no trouble concluding that the failure of the Gavino plaintiff to sue Chatfield or make any claim against her is a dispositive fact distinguishing this case from all other California cases applying the equitable contribution doctrine. (See, e.g., *American Continental (California)*, *supra*, 73 Cal.App.4th 508.) The Gavino plaintiffs' failure to act so as to warrant coverage under American Casualty's policy is not an omission that ACIC has any power to "correct." Whatever rights Hospital might have had to assert a claim against Chatfield,[9] ACIC has no such right. (*St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.* (1976) 65 Cal.App.3d 66, 75-76 [135 Cal.Rptr. 120].)

To conclude otherwise in third party cases, particularly with respect to professional liability policies, could raise a number of problems not considered or discussed by these parties. Suppose, for example, that Chatfield's policy had a substantial deductible or self-insured retention provision. If ACIC prevailed, would she then be held liable to contribute towards American Casualty's equitable contribution burden (even though coverage under her policy never arose and she did not receive and could not claim any benefits thereunder), thus effectively making her partially liable for a claim never made against her and from which she had been fully released? To ask the question is to answer it, but that is where ACIC's logic would take us. However harsh the result we reach may appear to ACIC, it is nothing more than a reflection of the reality of tort litigation against defendants who have liability insurance, and of the application of the basic principles by which we determine if and when a liability insurer's obligation to provide coverage will arise.[10]

---

under directors and officers liability policies, which typically extend coverage only to the directors and officers. (See, e.g., *Buckingham Apartments v. Liberty Mut. Ins. Co.* (1986) 508 N.Y.S.2d 493, 494-495 [124 A.D.2d 774, 775-776] ["impossible" to make showing that claim made against directors or officers where none were named as defendants in underlying action]; *Lorain Cty. Commrs v. United States Ins.* (1992) 81 Ohio App.3d 263 [610 N.E.2d 1061] [no covered claim under directors and officers liability policy where no directors or officers named in complaint].)

[9]Because it did not occur, we have no reason to consider what would have been the impact of a cross-complaint in the Gavino action for indemnity by Hospital against Chatfield. As a result, we do not reach or discuss the issues that might arise by the application of Labor Code sections 2802 and 2865 (relating to an employer's obligation to indemnify employees [§ 2802] and an employee's obligation to indemnify an employer [§ 2865]) to the facts of this case.

[10]As we have noted, this case presents a novel issue in California but American Casualty has cited us to three out-of-state cases that have reached similar results and have held that equitable contribution is *not* available against an insurer of a mutual insured who has not been made a party to the underlying litigation. (See *Medical Malpractice Ins. v. Medical Liability* (1982) 86 A.D.2d 476 [450 N.Y.S.2d 191]; *Missouri Prof. Liability Ins. v. American Cas. Co.*

#### 4. *American Casualty Is Not Precluded by the Doctrine of Collateral Estoppel from Denying Liability*

 ACIC argues that even if the foregoing analysis is entirely correct, American Casualty is collaterally estopped from relying upon it. To put it another way, ACIC contends that American Casualty may not "relitigate" the issue of its liability for equitable contribution. This argument primarily rests upon a decision of the Arizona Court of Appeals that held, *under the identical facts presented here,* and involving the same insurance companies, that American Casualty was liable for equitable contribution whether or not the nurse was actually named as a defendant in the underlying action. (*Am. Continental v. Am. Cas. of Reading, Pa.* (1995) 183 Ariz. 301 [903 P.2d 609] (*American Continental (Arizona)*).)

In that case, a hospital patient received intramuscular injections from a hospital nurse while sitting unsecured on the edge of a gurney. The standard of care required that such injections be given while the patient is in a prone position. After the second injection, the patient fell off the bed and struck his head on the floor, rendering him a quadriplegic. The patient subsequently filed suit against the hospital, the attending physician, and the emergency medical consultants. The complaint did not name the nurse as a defendant in the lawsuit. Just as in this case, ACIC insured the hospital (and its employees), and both American Casualty and ACIC insured the nurse, as she was one of the hospital's employees. American Casualty refused to pay anything on the nurse's behalf. As here, ACIC settled the underlying action filed against the hospital and then sued American Casualty for equitable contribution. Although the nurse was not a defendant in the underlying lawsuit, the Arizona court concluded that American Casualty was nonetheless liable to contribute because the mutual insured was negligent.[11]

ACIC also asserts that a recent California decision supports its preclusion argument. In *American Continental (California), supra,* 73 Cal.App.4th 508, ACIC had issued a liability policy to the hospital (and its employees) providing the same coverage as in this case. A nurse was a covered employee and she and the hospital were sued for the wrongful death of a

---

*of Reading, Pa.* (W.D.Mo. 1991) 760 F.Supp. 783; *St. Paul Fire & Marine v. Continental Cas.* (1992) 112 Or.App. 209 [827 P.2d 1366].)

[11] ACIC recognizes that, in this case, the negligence of the nurse in the Gavino incident has neither been established nor admitted (although Chatfield has conceded in a deposition that she failed to take certain actions that may or may not have been required by the standard of care). As already noted, it is ACIC's view, however, that Chatfield's negligence is a factual issue that properly can be resolved in its equitable contribution action against American Casualty (see fn. 5, *ante*). Due to the result we reach, we need not consider whether that contention is correct.

patient. ACIC provided a defense of both the hospital and the nurse. As in the present case, American Casualty was informed of the action, but refused to contribute to the defense or settlement of the action. The policies in that case were identical to those involved in the present case. The Court of Appeal found that the ACIC primary policy issued to the hospital, and the American Casualty policy issued to the nurse, both insured the same risk. Based on that conclusion, the court in *American Continental (California)* held that American Casualty was liable for equitable contribution to ACIC, which had defended and settled the case.

ACIC essentially argues that these two cases and the final decisions reached therein preclude American Casualty, under the doctrine of collateral estoppel, from denying its liability for equitable contribution in this case. We disagree.

▉ Under California law, collateral estoppel applies only when each of the following conditions are met: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) The party asserting collateral estoppel bears the burden of establishing these requirements.

▉ The issue which ACIC asks us to accept as resolved and binding upon American Casualty is that equitable contribution can be enforced by the insurer who has defended and settled the underlying action against the nonparticipating insurer even though their common insured was not a party to that action. Although ACIC spends a good part of its brief on this issue, we find it to be totally without merit. First, the decision in *American Continental (California)* did not even involve the issue. In that case, the nurse *was sued* as a defendant in the underlying action. Thus, the issue which is critical to the case before us was not even presented.[12]

The decision in *American Continental (Arizona), supra,* 903 P.2d 609, is of no use to ACIC for a different reason. In that case, the court rejected the

[12]The relevant preclusive effect of this case asserted by ACIC went to its contention that the issue as to whether ACIC and American Casualty in fact "insured the same risk" had been resolved. To the extent that ACIC's use of the phrase "insured the same risk" refers to the fact that the policies of both ACIC and American Casualty *promised* to provide coverage for damage claims from the negligence of Hospital's nurse employees *in the event such claims were ever made,* then ACIC is correct; that conclusion, however, is irrelevant to the issue

proposition that we find so critical: that a valid claim for equitable contribution by one insurer against a second insurer requires that the second insurer in fact have a *legal obligation* to provide coverage to the mutual insured for the same risk. In *American Continental (Arizona)*, the court dismisses that proposition as resulting from a failure to distinguish between a claim for indemnity and one for equitable contribution. Citing another Arizona case (*Industrial Indemnity Co. v. Beeson* (1982) 132 Ariz. 503 [647 P.2d 634],[13] the *American Continental (Arizona)* court held that in order to sustain a claim for equitable contribution it was only necessary to demonstrate that the two insurers had *insured* the same risk. Thus, in order to establish liability for equitable contribution, it was only necessary to prove that the mutual insured had been negligent, such negligence was the cause of the third party's injuries and a claim for those injuries was an insured risk under both policies. Under such a rule, it would not matter that the mutual insured had not been sued or even been the recipient of a claim or demand.

In the view of the *American Continental (Arizona)* court, an equitable contribution claim depended upon the "relationship of two insurers insuring the same risk" and was not " 'derivative of any third person, but [existed] as an independent action by one insurer against another.' [Citation.]" (*American Continental (Arizona)*, *supra*, 903 P.2d at p. 610.) The court went on to state that, "[i]n determining whether a claim for equitable contribution may lie, we see no reason why the question should be limited to whether a claim was made or a law suit filed against the insured." (*Id.* at p. 611.) Relying upon *Industrial Indemnity Co. v. Beeson, supra*, 647 P.2d 634, the court held that "one insurer may recover from another insurer whose insured was never named as a party in the underlying lawsuit on the condition the insurer seeking contribution is able to establish the negligence of the mutual insured." (*American Continental (Arizona)*, at p. 611.) As a result of this legal conclusion, the *American Continental (Arizona)* court did not consider or discuss the possible requirement that there be a *legal obligation* to provide coverage before there could be a valid claim for equitable contribution asserted. It did not do so because, under Arizona law, that is not a necessary

---

before us. To the extent ACIC relies on the quoted phrase to support its argument that both ACIC and American Casualty were "legally obligated" to provide coverage for Chatfield in this case, and such obligation was preclusively established by the decision in *American Continental (California)*, we disagree for the reason stated above. In *American Continental (California)* the nurse was named and served as a defendant in the action. The case before us presents an entirely different factual context.

[13]ACIC also claims that the Arizona court relied on a California case (*California Food Service, supra*, 130 Cal.App.3d 892) to support its conclusion. To the extent that this is so, the Arizona court wrongly applied California law for the reasons already set forth in our analysis of *California Food Service.*

element. As we have discussed at some length, this is contrary to California law.[14]

Certainly, the doctrine of collateral estoppel cannot be utilized to bind a California litigant to a principle of law adopted in the prior foreign court litigation which is contrary to the law of California; nor can it be utilized to preclude a party from litigating a novel issue of law in California,[15] merely because that party had failed to persuade the courts of another state on the legal wisdom of its position. This is particularly true where, as here, it appears that the foreign court based its decision, at least in part, on *its* interpretation of California authority. To conclude otherwise would make it impossible for California to establish its own law in cases where the parties might have previously litigated the issue to a different result in an unrelated case in another jurisdiction. Or, to put it another way, ACIC's argument fails because it has not established that the "same issue" was actually litigated and resolved in the prior litigation. The Arizona court reached its decision under Arizona law while we are asked to decide this case under California law.

■ Moreover, as the California Supreme Court has stated, "Even assuming all the threshold requirements [of collateral estoppel] are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. [Citation.]" (*Lucido v. Superior Court, supra,* 51 Cal.3d at pp. 342-343.) The public policies underlying collateral estoppel include the preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation, and these factors can "strongly influence whether its [collateral estoppel] application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Id.* at p. 343.) Here, our determination of an issue not heretofore addressed by a California court certainly would not undermine any of these fundamental public policies and, in consequence, counsels against application of the collateral estoppel doctrine.

■ As noted, even ACIC concedes this is an issue of first impression in California. Accordingly, our determination of the issue cannot possibly degrade public confidence in the judicial system, which is threatened when

---

[14]The *American Continental (Arizona)* court identified three elements necessary to a claim for equitable contribution: "(1) the two insurers must insure the same risk; (2) neither can be the primary insurer; and (3) the loss sustained must be caused by the risk insured against. [Citation.]" (*American Continental (Arizona), supra,* 903 P.2d at p. 611, fn. omitted.)

[15]ACIC concedes in its opening brief that this case presents a novel issue of law in California.

two or more courts render inconsistent decisions. (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 347.) Likewise, because the issue has never been directly addressed in California, it can hardly constitute a waste of California's judicial resources. Finally, it is difficult to conceive how a matter addressing a novel issue of California law constitutes "baseless or unjustified litigation" that might harass a party. (*Id.* at p. 351.) Likewise, ACIC's status as the plaintiff in this case makes it difficult to characterize this litigation as "vexatious." In short, none of the policies underlying the doctrine of issue preclusion would be advanced in this case by our application of the doctrine so as to preclude American Casualty's contest of an issue which we believe was wrongly decided by an Arizona court.

## DISPOSITION

The judgment is affirmed. American Casualty shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 15, 2001, and on February 1, 2001, February 7, 2001, and February 16, 2001, the opinion was modified to read as printed above.